UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY CARRICK, | ) | CIVIL ACTION NO. 4:19-cv-692 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| ANDREW SAUL,[1] | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

## I.   INTRODUCTION

Plaintiff Kimberly Carrick, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g).

After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).  The caption in this case is amended to reflect this change.

final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.   BACKGROUND & PROCEDURAL HISTORY

On September 19, 2016, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 126). In this application, Plaintiff initially alleged she became disabled as of May 30, 2012, when she was 49 years old, due to the following conditions: fibromyalgia; depression; anxiety; muscle pain; joint pain; arthritis; fatigue; Hashimoto's thyroiditis; eye issues – flashing lights; and headaches/dizziness. (Admin. Tr. 153). However, Plaintiff later amended her alleged onset date to September 19, 2016. (Admin. Tr. 117). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, see, remember, concentrate, understand, follow instructions, and get along with others. (Admin. Tr. 146). Plaintiff has at least a high school education and is able to communicate in English. (Admin. Tr. 20). Before the onset of her impairments, Plaintiff worked as a painter. (Admin. Tr. 19).

On February 7, 2017, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 61-65). On March 16, 2017, Plaintiff requested an administrative hearing. (Admin. Tr. 68-69).

On May 16, 2018, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Richard Guida (the "ALJ"). (Admin. Tr. 29). On August 22, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 12-21). On October 1, 2018, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 7).

On March 14, 2019, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1).

On April 24, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id.* As relief, Plaintiff requests that the Court reverse the decision of the ALJ and award Plaintiff disability insurance benefits, or in the alternative, remand this case to the Commissioner for a new hearing. *Id.* at p. 3.

On September 5, 2019, the Commissioner filed an Answer. (Doc. 8). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id.* Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 9).

Plaintiff's Brief (Doc. 12), the Commissioner's Brief (Doc. 13), and Plaintiff's Reply (Doc. 14) have been filed.  This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

---

[2] Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on August 22, 2018.

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the

basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   ANALYSIS

Plaintiff's arguments from her brief are best broken into two main issues:

(1)   Substantial evidence does not support the ALJ's evaluation of the opinion evidence; and

(2)   The ALJ's multiple errors with symptom evaluation compel reversal

(Doc. 12, p. 1).

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his August 2018 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2016. (Admin. Tr. 14). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between September 19, 2016 (Plaintiff's alleged onset date) and December 31, 2016 (Plaintiff's date last insured) ("the relevant period"). (Admin.

Tr. 14). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: bursitis, degenerative joint disease; fibromyalgia; and myopia. (Admin. Tr. 14). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 16).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) subject to the following additional limitations:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and she could have frequently performed postural activities except she could have occasionally used ladders, ropes, or scaffolds. She could have occasionally perform (sic) left far acuity. She should have avoided concentrated exposure to extreme cold, wetness, vibrations, and hazards.

(Admin. Tr. 16).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 19). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 20). To

support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: cleaner housekeeper (DOT 323.687-014); bakery worker conveyor line (DOT 524.687-022); and machine tender laminating (DOT 569.686-046). (Admin. Tr. 20).

B.   WHETHER THE ALJ PROPERLY EVALUATED DR. BONLIE'S OPINION

Regarding the ALJ's treatment of the opinion of Dr. Bonlie, Plaintiff raises four arguments: (1) the ALJ failed to evaluate Dr. Bonlie's opinion in accordance with the checklist of factors under 20 C.F.R. 404.1527(c); (2) Dr. Bonlie's opinion was consistent with the record; (3) the ALJ should have contacted Dr. Bonlie to obtain further explanation of his opinion; and (4) the ALJ assigned "great weight" to a non-examining, non-treating source.

Because Plaintiff's first and second issues are so closely tied, I will address them together.

With respect to her first argument, Plaintiff argues:

[T]he ALJ failed to evaluate Dr. Bonlie's opinion in accordance with the checklist of factors that C.F.R. 404.1527(c) provides. Here, many of these considerations favor crediting Dr. Bonlie's opinion: Dr. Bonlie has been routinely treating Carrick since September 2015 who routinely prescribed medications to Carrick (Tr. 281-87). 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the

medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.")

(Doc. 12, p. 7).

In response to Plaintiff's first argument, Defendant argues:

Plaintiff contends that the ALJ did not analyze all of the 20 C.F.R. § 404.1527 factors (Pl.'s Br. At 7). The law, however, is clear that an ALJ need not explicitly discuss each factor in his decision. *Meji v. Berryhill*, No. 3:16-2558, 2018 WL 6495077, at *6 (M.D. Pa. Oct. 24, 2018), *report and recommendation adopted sub nom. Moreta Meji v. Berryhill*, No. 3:16-25558, 2018 WL 6448799 (M.D. Pa. Dec. 10, 2018) ("the ALJ . . . does not need to specifically articulate the factors considered in [20 C.F.R. § 404.1527]." *Samah v. Comm'r of Soc. Sec.*, No. 17-08592, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018) ("an ALJ need not explicitly discuss each factor in his decision"); *Podvorec v. Berryhill*, No. 17-cv-00137, 2017 WL 3705062, at *8 (W.D. Pa. Aug. 28, 2017) ("Although the ALJ did not explicitly spell out all of these factors in her decision, it contains enough detail for this Court to meaningfully review it.").

(Doc 13, p. 4).

Defendant then argued that the ALJ sufficiently explained his decision to

assign Dr. Bonlie's opinion little weight.

Regarding her second argument, Plaintiff argues:

[C]ontrary to the ALJ's finding, Dr. Bonlie's opinion was consistent with the record Supportive diagnostic studies included a right knee MRI from December 2010 revealed degenerative joint disease, patellofemoral joint (Tr. 415) and hip x-rays from October 2012 reveals moderate degenerative changes of the left hip and mild degenerative

changes of the right hip (Tr. 247). Supportive clinical findings including positive tenderness to palpation over trochanteric bursa bilaterally, markedly positive Ober's test bilaterally and positive tender points. (Tr. 419, 432) The record also consistently documents supportive signs and symptoms: multiple tender points, hip pain, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent severe headaches, numbness and tingling. (Tr. 281, 282, 284, 285, 419, 432, 518, 521, 535, 556) Given Dr. Bonlie's longitudinal treatment history with Carrick and the consistency of his opinion with the medical evidence – the ALJ erred in failing to afford Dr. Bonlie's opinion great weight.

(Doc. 12, p. 8).

The Commissioner responds:

[T]he ALJ explained exactly why he gave Dr. Bonlie's opinion little weight. As the ALJ noted, the opinion "occurred significantly after the December 31, 2016 date last insured" (Tr. 19) and, thus, was not relevant to the time period at issue. *Wolford v. Berryhill*, No. 3:17-CV-983, 2017 WL 6405865, at *3 (M.D. PA. Dec. 15, 2017). "The ALJ was entitled to consider the complete medical record and to place greater reliance on the contemporaneous entries than on the doctor's later, inconsistent opinion." *Scouten v. Comm'r Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) (citing *Plummer v. Apfel*, 186 F.3d 422, 430 (3d Cir. 1999)).

And that is exactly what the ALJ here did. Dr. Bonlie's opinion was inconsistent with the objective medical evidence. A physician's opinion is entitled to weight only if it "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)). It is well established that an ALJ is "free to accept some medical evidence and reject other evidence," so long as he "provides an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014).

(Doc. 13, pp. 4-5).

I construe Plaintiff's first and second arguments to be that the ALJ erred by failing to accord Dr. Bonlie's opinion great weight under 20 C.F.R. § 404.1527(c)(2). This provision of the regulations is commonly referred to as the "treating physician rule" and states as follows:

> (c) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> . . . .
>
> (2) Treatment relationship. Generally, we give more weight to medical opinions from your **treating sources**, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. § 404.1527(c)(2) (emphasis added).

"Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). This principle applies with particular force to the opinion of a treating physician. See 30 C.F.R. § 404.1527(c)(2). "A treating source's opinion is not entitled to controlling weight if it is 'inconsistent with other substantial evidence in [the] case record.'" *Scouten v. Comm'r Soc. Sec.*, 722 Fed. Appx. 288, 290 (3d Cir. 1999) (quoting 20 C.F.R. § 404.1527(c)(2)).

At the outset, I note that the ALJ was not required to explicitly address each factor under 20 C.F.R. 404.1527(c)(2). Thus, remand is not required on that issue. I continue my analysis of whether the ALJ erred by assigning Dr. Bonlie's opinion "little weight."

According to the record, Plaintiff treated with Dr. Bonlie between March 2016 and October 2016.[3] (Admin. Tr. 281-87). According to Dr. Bonlie's assessments, Plaintiff's symptoms included joint pain and fatigue. (Admin. Tr. 282, 284, 285).

---

[3] Of the Dr. Bonlie reports cited by Plaintiff, the earliest dated report is March 10, 2016 (Admin. Tr. 285). However, on an RFC questionnaire, Dr. Bonlie stated that his treatment of Plaintiff commenced in September 2015. (Admin. Tr. 556).

On April 6, 2018, Dr. Bonlie completed an RFC questionnaire.[4] (Admin. Tr. 556). In that questionnaire, Dr. Bonlie noted that he treated Plaintiff beginning in September 2015 with appointments every two to three months. *Id.* Dr. Bonlie listed Plaintiff's diagnosed impairments as "hypothyroid OA Rt knee common variable immune deficient" and indicated a "fair" prognosis. *Id.* Dr. Bonlie noted the following symptoms through a checklist on the form: multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent severe headaches, vestibular dysfunction, numbness and tingling, sicca symptoms, anxiety, panic attacks, depression, hypothyroidism, and chronic fatigue syndrome. *Id.* Dr. Bonlie stated that Plaintiff's symptoms were constant, and she was incapable of even "low stress" jobs. (Admin. Tr. 556-57). Dr. Bonlie stated that Plaintiff could walk one half of a city block without rest or severe pain. (Admin. Tr. 558). Dr. Bonlie stated that Plaintiff would need to lie down on an hourly basis for 15-30 minutes before returning to work. *Id.* Dr. Bonlie further noted that Plaintiff could sit for thirty minutes before needing to get up and stand for five minutes before needing to sit or walk around. *Id.*

---

[4] Dr. Bonlie completed the April 6, 2018 RFC questionnaire more than one year and three months after December 31, 2016 – Plaintiff's date last insured. (Admin Tr. 556).

The ALJ gave "little weight" to the opinion of Dr. Bonlie. In doing so, the ALJ stated:

> [T]he April 6, 2018 opinion of primary care provider, Wayne Bonlie, MD, is given little weight. This opinion occurred significantly after the December 31, 2016 date last insured. Also, Dr. Bonlie's treatment records up to the date last insured do not note any objective examinations performed by Dr. Bonlie (4F/1-7; 10F/1). On October 6, 2016, the examination by another provider in Dr. Bonlie's office resulted in findings unsupportive of Dr. Bonlie's opinion; i.e. other than "mild left flank tenderness," results were normal including normal gait (5F/2). Furthermore, treating rheumatology examinations on January 13, 2017 and February 9, 2017 note no objective abnormalities supporting the limitations opined by Dr. Bonlie (12F/19-20, 28-29). For example, regarding the right knee cited by Dr. Bonlie, the rheumatologist noted: "there was mild tender crepitus on range of motion of the right knee, there was no knee effusion or instability" and "the contralateral knee was unremarkable" (12F/20).

(Admin. Tr. 19).

The ALJ explained his decision to assign Dr. Bonlie's opinion little weight. The ALJ noted that Dr. Bonlie's opinion "occurred significantly after the December 31, 2016 date of last insured." (Admin. Tr. 19). Thus, Dr. Bonlie's opinion was not relevant to the time period at issue. *Wolford v. Berryhill*, No. 3:17-CV-983, 2017 WL 6405865, at *3 (M.D. Pa. Dec. 15, 2017) (concluding that an opinion rendered over one year after the date last insured was not relevant to the time period at issue). An ALJ is entitled to assign greater weight to contemporaneous opinions than on a later, inconsistent opinion. *Scouten v. Comm'r of Soc. Sec.*, 722 Fed. Appx. 288, 290 (3d Cir. 2018) ("The ALJ was entitled to consider the complete medical record

and to place greater reliance on the contemporaneous entries than on the doctor's later, inconsistent opinion."). The ALJ weighed the medical evidence, finding that contemporaneous evaluations of Plaintiff deserved greater weight than Dr. Bonlie's opinion which was rendered some 15 months after Plaintiff's date last insured. (Admin Tr. 18-19).

Regarding inconsistencies with the record, the ALJ stated that Dr. Bonlie's own treatment records show that Plaintiff prepared herself and her family for holidays, took care of her chickens, cooked meals, did chores around the house like laundry, drove, shopped, and managed her finances. (Admin. Tr. 176-177). As noted above, Plaintiff argues that the record supports a conclusion that Plaintiff has the following symptoms: multiple tender points, hip pain, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent severe headaches, numbness and tingling. (Doc. 12, p. 8). However, Dr. Bonlie's treatment records from the relevant time period merely provide a recitation of the subjective report of Plaintiff's symptoms. In each of the Dr. Bonlie medical reports cited by Plaintiff, the section for an "objective" assessment is left blank. No objective examinations are included in Dr. Bonlie's reports. Plaintiff does not provide any other citations to the record. Plaintiff has not shown any objective findings that are consistent with the record. No error has been shown regarding the ALJ's treatment

of Dr. Bonlie's opinion. Thus, the ALJ did not err when he assigned "little weight"

to Dr. Bonlie's opinion.

Regarding her third argument, Plaintiff argues:

[I]f the ALJ was unable to discern how Dr. Bonlie's opinion was
supported, given that the record contained Dr. Bonlie's treatment
records, the ALJ should have recontacted Dr. Bonlie to obtain further
explanation of the opinion. *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th
Cir. 2004), quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.
1996) ("If the ALJ thought he needed to know the basis of [medical]
opinions in order to evaluate them, he had a duty to conduct an
appropriate inquiry, for example, by subpoenaing the physicians or
submitting further questions to them.").

(Doc. 12, p. 8).

Regarding Plaintiff's third argument, Defendant argues:

[T]here was no obligation to re-contact Dr. Bonlie based on his report
that was inconsistent with the remainder of the record evidence. 20
C.F.R. § 404.1520b(b), (c). The substantial-evidence standard of
review, which requires only "more-than-a-mere-scintilla" of evidence,
*Biestek*, 139 S. Ct. at 1157, was easily satisfied based on the facts in
this case, and this Court should affirm.

(Doc. 13, p. 10).

The regulations on this subject explain that, after the ALJ reviews all of the

evidence, he or she makes findings about what that evidence shows. 20 C.F.R. §

404.1520b. If the ALJ cannot make a determination because the evidence in the

record is incomplete or inconsistent the ALJ *may* take the following actions:

(1) If any of the evidence in your case record, including any medical
opinion(s) and prior administrative medical findings, is inconsistent, we

will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have.

(2) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (b)(2)(i) through (b)(2)(iv) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.

> (i) We may recontact your medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;

> (ii) We may request additional existing evidence;

> (iii) We may ask you to undergo a consultative examination at our expense (see §§ 416.917 through 416.919a); or

> (iv) We may ask you or others for more information.

(3) When there are inconsistencies in the evidence that we cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether you are disabled, we will make a determination or decision based on the evidence we have.

20 C.F.R. § 404.1520b(b).

Here, there was enough evidence in this case for the ALJ to reach a conclusion on the issue of disability. The ALJ did not have an obligation to recontact Dr. Bonlie because the record as a whole was sufficient for the ALJ to reach a conclusion,

remand is not required. *See Grier v. Berryhill,* No. 18-386, 2019 WL 2870728, at

*10 (D. Del. July 3, 2019) (citing *Campell v. Colvin*, 2016 WL 4503341, at *3 (W.D.

Pa. Aug. 29, 2016) ("An ALJ may only consider recontacting a treating physician,

where the evidence is consistent but there is insufficient evidence to determine

whether a claimant is disabled or after weighing the evidence the ALJ cannot reach

a conclusion about whether a claimant is disabled. The ALJ, however, is not

obligated to do so.")).

As her fourth argument, Plaintiff challenges the ALJ's assessment of Dr.

Bermudez's opinion:

> [T]he ALJ assigned "great weight" to the opinions of the non-examining non-treating State Agency Medical Consultant, M. Bermudez, MD. (Tr. 56-57) Pursuant to 20 CFR § 404.1527(c)(1), more weight is assigned to the opinion of a source who has examined the Claimant than to the opinion of a source who has not examined the Claimant. Thus, State Agency doctors' opinions are entitled to little, if any, weight. Dr. Bermudez (Code 41) is a radiologist (Tr. 57) and not a family physician like Dr. Bonlie. Thus, the ALJ's reliance upon the opinion of the State physician is in error.

(Doc. 12, p. 9).

Regarding Dr. Bermudez, Defendant argues:

> The medical opinion of expert state agency radiologist Minda Bermudez, M.D., who carefully reviewed Plaintiff's medical records to date – including the x-rays and MRI that Plaintiff references (Pl.'s Br. At 7) – concluded that Plaintiff could perform light work with additional limitations (Tr. 18, 54-58). State agency medical consultants are highly qualified physicians who are "experts in the evaluation of the medical issues in disability claims under the Act." Social Security

Ruling (SSR) 96-6p, 1996 WL 374180, at *2 (S.S.A.). In appropriate circumstances, opinions from state agency physicians may be entitled to greater weight than the opinions of treating physicians. *Id.*; 20 C.F.R. § 404.1527(e); *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) (upholding ALJ's rejection of treating physician evidence in part based on non-examining state agency consultant opinions). This Circuit has explicitly recognized that an ALJ may rely on the opinion of a state agency reviewing physician. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing SSR 96-6p and noting that "State agency opinions merit significant consideration as well.").

As the ALJ explained and as Dr. Bermudez memorialized, "the treatment record between the September 9, 2016 alleged onset date and the December 31, 2016 date last insured consists of several primary care provider visits showing essentially unremarkable physical examination results" (Tr. 18, 57). Dr. Bermudez examined Plaintiff's activities of daily living, x-rays, MRIs, medication treatment, and other factors to conclude that Plaintiff was not disabled (Tr. 54, 57). The moderate limitations and light work "more than amply" accommodated any abnormalities that could be gleaned from the treatment record up to the alleged onset date (Tr. 18).

(Doc. 13, pp. 7-9).

The ALJ was faced with contrasting opinions from Dr. Bonlie and Dr. Bermudez. As noted above, the ALJ did not err by assigning Dr. Bonlie's opinion "little weight."

Regarding Dr. Bermudez, the ALJ stated:

The February 6, 2017 opinion of state agency medical consultant, Minda Bermudez, MD, is given great weight (2A). The moderate limitations opined by Dr. Bermudez more than amply accommodates any abnormalities that can be gleaned from the above outlined treatment record. For example, the treatment record between the September 9, 2016 alleged onset date and the December 31, 2016 date

last insured consists of several primary care provider visits showing essentially unremarkable physical examination results (4F/1; 5F/2; 10F/1). Also, two rheumatology examinations shortly after the date last insured revealed very little in the form of objective abnormalities (12F/19-20, 28-29). In addition, treating eye examination supports no more than the mild limitations expressed by Dr. Bermudez (9F).

(Admin. Tr. 18).

The ALJ concluded that Dr. Bermudez more aptly captured Plaintiff's RFC. The ALJ's assessment of Dr. Bermudez's opinion is supported by the record. The ALJ adequately explained the grounds for affording greater weight to the non-examining doctor's opinion than the contrasting views of Dr. Bonlie. The ALJ did not err in its treatment of Dr. Bermudez's opinion. Remand is not appropriate regarding the ALJ's assessment of the medical opinion evidence.

C.   WHETHER THE ALJ APPLIED THE WRONG EVIDENTIARY STANDARD IN EVALUATING PLAINTIFF'S STATEMENTS ABOUT HER SYMPTOMS

Plaintiff argues that the ALJ's analysis of Plaintiff's statements about her symptoms is flawed for three reasons: (1) the ALJ applied a clear and convincing evidence standard instead of the required preponderance of the evidence standard; (2) the ALJ erred by not questioning Plaintiff about her treatment motivations and decisions before drawing a negative inference about Plaintiff's minimal evidence of receiving treatment from specialists; and (3) the ALJ erred by citing to Plaintiff's activities of daily living to undermine the severity of her symptoms.

1. *Whether the ALJ Applied the Wrong Evidentiary Standard in Evaluating Plaintiff's Statements About Her Symptoms*

With respect to her contention that the ALJ applied the wrong evidentiary standard, Plaintiff argues:

> In evaluating Carrick's symptoms, the ALJ stated that her allegations were "not entirely consistent with the medical evidence and other evidence in the record". (Tr. 17) The "not entirely consistent" standard implies that the ALJ used a clear and convincing evidence standard. But, an ALJ must decide a case based upon a preponderance of the evidence standard. Moreover, the ALJ's decision contains no discussion of which allegations he found consistent with the record. The ALJ's symptom evaluation violates SSR 16-3 which states that ALJs will consider the consistency of the claimant's allegations with the medical and other evidence, but it does not mandate that the claimant's allegations be completely consistent with the record. See SSR 16-3p ("In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record") (emphasis added).

(Doc. 12, pp. 9-10) (footnote omitted).

Although the Commissioner generally responded that the ALJ's evaluation of Plaintiff's statements about her symptoms was proper, the Commissioner did not address Plaintiff's allegation that the ALJ applied the wrong evidentiary standard when evaluating Plaintiff's statements about her symptoms. Nonetheless, I am not persuaded that the ALJ's use of the phrase "not entirely consistent with the medical evidence and other evidence in the record," suggests that the ALJ applied a clear and convincing evidence standard.

The Commissioner's regulations define "symptoms" as the claimant's own description of his or her impairment. 20 C.F.R. § 404.1502(1); SSR 96-4p, 1996 WL 374187. A symptom, however, is not a medically determinable impairment, and no symptom by itself can establish the existence of such an impairment. SSR 96-4p, 1996 WL 374187. The ALJ is not only permitted, but also required, to evaluate the credibility of a claimant's statements about all symptoms alleged and must decide whether and to what extent a claimant's description of his or her impairments may be deemed credible. In many cases, this determination has a significant impact upon the outcome of a claimant's application, because the ALJ need only account for those symptoms – and the resulting limitations – that are credibly established when formulating his or her RFC assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). To facilitate this difficult analysis, the Commissioner has devised a two-step process that must be undertaken by the ALJ to evaluate a claimant's statements about his or her symptoms.

First, the ALJ must consider whether there is an underlying medically determinable impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptom alleged. 20 C.F.R. § 404.1529(b). If there is no medically determinable impairment that could reasonably produce the symptom alleged, the symptom

cannot be found to affect the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(b); SSR 96-4p, 1996 WL 374187; SSR 16-3p, 2016 WL 1119029.

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms which can be reasonably attributed to a medically determinable impairment. 20 C.F.R. § 404.1529(c)(1). Symptoms will be determined to reduce a claimant's functional capacity only to the extent that the alleged limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). However, an ALJ will not reject statements about the intensity, persistence, or limiting effects of a symptom solely because it is not substantiated by objective evidence. 20 C.F.R. § 404.1529(c)(3). Instead, the ALJ will evaluate the extent to which any unsubstantiated symptoms can be credited based on the following factors: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; any treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; any measures the claimant uses or has used to relieve his or her pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and any

other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246, at *9 (E.D. Pa. Mar. 7, 2000) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). An ALJ is not free to discount a claimant's statements about his or her symptoms or limitations for no reason or for the wrong reason. *Rutherford*, 399 F.3d at 554.

As noted above, the Commissioner's regulations merely require that a claimant's symptoms be "reasonably"—as opposed to entirely—consistent with objective medical evidence to be credited. Plaintiff argues that the ALJ applied the wrong standard based on his use of popular boilerplate "not entirely consistent" language. Nonetheless, I am not persuaded by Plaintiff's argument that use of this boilerplate phrase requires remand in this case. Similar arguments involving bad boilerplate have been raised in this court, and in others across the country. Courts have generally concluded that the use of "bad boilerplate" in an ALJ's evaluation of a claimant's statements does not automatically undermine or discredit an ALJ's ultimate conclusion. *Ronald B. v. Saul*, No. 18-CV-5881, 2019 WL 3778070 at *5 (N.D. Ill. Aug. 12, 2018). This type of error is harmless so long as the ALJ points to

Page 26 of 29

information that justifies his or her conclusion. *Id.* Although the ALJ's in *Ronald B.* was ultimately remanded because the ALJ's "explanation failed to build an 'accurate and logical bridge' between the evidence and her conclusions," that certainly is not the case here. As noted above, the ALJ relied on the unremarkable findings in the medical opinions and Plaintiff demonstrated ability to conduct daily activities. Accordingly, I find that the ALJ's use of bad boilerplate in his credibility assessment does not require remand in this case.

   2. *Plaintiff's Additional Arguments Regarding Plaintiff's Statements About Her Symptoms*

   I note that Plaintiff raises two additional arguments regarding the ALJ's evaluation of Plaintiff's symptoms. Plaintiff argues that ALJ improperly (1) found that the record contained minimal evidence of Plaintiff receiving specialist treatment during the relevant period; and (2) cited to Plaintiff's activities of daily living to undermine the severity of her symptoms. I address these remaining arguments together.

   First, Plaintiff argues that the ALJ's statement regarding Plaintiff's lack of specialist treatment was improper. In his decision, the ALJ stated: "The record has minimal evidence the claimant received specialist treatment during the relevant period." (Admin. Tr. 18).

Second, Plaintiff argues that the ALJ erred by citing to Plaintiff's daily living activities when assessing Plaintiff's statements about her symptoms and limitations.

In his decision, the ALJ summarized Plaintiff's statements about her symptoms and limitations:

> The claimant argues she is unable to work because she has constant muscle and joint pain, fatigue, constant exhaustion, and she can no longer stand for any length of time or sit for extended periods of time. She claims her pain keeps her up, and she has difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, seeing, and climbing stairs. The claimant states she must rest a couple minutes after walking 50 yards. She insists she can only shower or dress two to three times a week (Hearing Testimony; 1E; 9E; 11E; 16E).

(Admin. Tr. 17).

In his decision, the ALJ explained:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.*

The ALJ then proceeded to summarize the evidence he relied on in discounting Plaintiff's statements regarding her symptoms.

The Court's review of the ALJ's decision reveals that the ALJ fully explained his rationale for discounting Plaintiff's testimony regarding the severity of her

symptoms and limitations. This assessment is firmly grounded in the objective medical evidence of record. Both of Plaintiff's arguments regarding the ALJ's assessment of Plaintiff's subjective complaints about her symptoms and limitations fail. Any error on these issues would be harmless. Remand is not required for further consideration of Plaintiff's testimony about her symptoms and limitations or the ALJ's treatment of her statements.

V.      CONCLUSION

For the reasons stated herein, Plaintiff's request for the award of benefits, or in the alternative a new administrative hearing will be DENIED as follows:

(1)     The final decision of the Commissioner will be AFFIRMED.

(2)     Final judgment will be issued in favor of Andrew Saul, Commissioner of Social Security.

(3)     An appropriate order shall follow.

Date: June 22, 2020                      BY THE COURT

                                         *s/William I. Arbuckle*
                                         William I. Arbuckle
                                         U.S. Magistrate Judge